UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DON KELVIN ANDY PERKINS,

                Petitioner,

                                  CASE NO. 06-12492

v.

                                  PAUL D. BORMAN

KENNETH T. MCKEE,                UNITED STATES DISTRICT JUDGE

                Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Don Kelvin Andy Perkins has filed a *pro se* application for the writ of habeas corpus challenging his state convictions for first-degree murder and related offenses. The Court has determined that one of Petitioner's claims is procedurally defaulted and that the other claims lack merit. Accordingly, the habeas petition will be denied.

## I. BACKGROUND

Petitioner was charged in Wayne County, Michigan with four counts of first-degree murder[1], one count of armed robbery, one count of assault with intent to commit murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. The charges arose from an incident on October 15, 2001. The state court accurately summarized the facts as follows:

---

    [1] There were two murder victims, but Petitioner was charged with murdering each victim under two theories: premeditated murder and murder during the commission of a felony. Consequently, he was charged with four counts of first-degree murder.

At about 10:45 p.m. on October 15, 2001, Maurice Odums, Damon Hill, and Antonio Hall drove to a residence at 14181 Spring Garden so that Hall could meet someone to sell a pound of marijuana. After parking the car, they walked up the driveway to get to the back of the residence. Hill and Hall were carrying large wads of money in their pockets and Hall was carrying marijuana in his bag. When they got to the back of the residence, they were confronted by defendant, Corey Scales, and one other unidentified man, who were all armed with handguns. When defendant pointed his gun at Odums, Hill, and Hall, Hall told the gunmen that they could have whatever they wanted if they did not shoot him. Odums then heard a gunshot and started running away. Scales pursued Odums and shot at him several times during the chase. Eventually, Odums saw a parked police car and ran toward it. Before reaching the police car, Odums and the police officers heard more gunshots coming from the backyard of 14181 Spring Garden. The police officers patted Odums down and put him in the police car. Soon after, Scales emerged from an alley and the police arrested him. The police investigated and found the bodies of Hill and Hall in a driveway between two residences. Both had been killed by a single gunshot to the head. A search of their bodies revealed that Hall was carrying $5.

Meanwhile, another police officer, who was arriving on the scene, noticed a Caprice being driven by defendant and occupied by Anthony Patton. Defendant and Patton testified that they were not at 14181 Spring Garden that night, but were driving to pick up defendant's friend, Lena Nixon, at a nearby bus stop. Defendant slowed down next to the police car where Scales was detained. Defendant testified that he slowed down by the police car because he was curious, and that he recognized Scales in the back of the car. According to the officer, Scales had his face pressed up to the window and appeared to be stating something to the occupants of the Caprice. The officer ordered defendant to stop his car, but defendant drove away. Defendant testified that he did not know that the officer ordered him to stop. Two police cars pursued defendant. Defendant testified that when he noticed he was being followed by police, he sped up because Patton said he did not want to be stopped by police. At one point during the chase, defendant slowed down without coming to a full stop and let Patton out. An officer got out of his car to pursue Patton on foot, but could not catch him. Later, defendant stopped, and police arrested him. A search of defendant revealed that he was carrying $10.50. The next day, Odums identified defendant at a police lineup.

At trial, defendant argued that he was not involved in the murders. In support of this defense, he testified that he was at a wake until about 10:40 p.m. on October 15, 2001. Several witnesses, including Patton, corroborated defendant's testimony that he was at the wake until between 10:30 p.m. and 11:00 p.m.

2

*People v. Perkins*, No. 250159 (Mich. Ct. App. Nov. 9, 2004) (unpublished).

On February 13, 2003, a circuit court jury found Petitioner guilty, as charged, of two counts of first-degree (premeditated murder), Mich. Comp. Laws § 750.316(1)(a), two counts of first-degree felony murder; Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp. Laws § 750.529, assault of with intent to murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.

The trial court dismissed two of Petitioner's first-degree murder convictions and his armed robbery conviction at sentencing. The court then sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of life imprisonment for the two remaining first-degree murder convictions, 225 months to 40 years in prison for the assault conviction, and  forty to sixty months in prison for being a felon in possession of a firearm. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* opinion, and on July 26, 2005, the Michigan Supreme Court denied leave to appeal. *See People v. Perkins*, 473 Mich. 882 (2005) (table).

Petitioner filed his habeas corpus petition under 28 U.S.C. § 2254 on June 5, 2006. His grounds for relief read:

> I.    Don Perkins was denied due process and a fair trial where the trial court impaired his right to present a complete defense and ignored his right to compulsory process.
>
> II.   There is plain error and a violation of Don Perkins' right to a fair trial where the prosecutor makes improper opening statement, makes improper argument to the jury by giving unsworn personal statements, shifting the burden of proof and denigrating defense counsel, and engages in improper cross-examination of defendant and a defense witness.

3

     III.     The trial court erred by gratuitously providing an instruction which implicitly vouched for witness Maurice Odums.

     IV.     Don Perkins was denied his Sixth Amendment right to the effective assistance of counsel.

## II.  STANDARD OF REVIEW

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.

## III.  DISCUSSION

### A.  The Right to Defend and to Have Compulsory Process

4

Petitioner alleges that the trial court impaired his right to present a complete defense and ignored his right to compulsory process when the court directed him to proceed without producing Police Officer Fisher and witness Lena Nixon.  The Michigan Court of Appeals reviewed this claim and concluded that the trial court did not abuse its discretion nor deprive Petitioner of his right to present a defense by denying Petitioner's requests to produce Officer Fisher and to assist him in locating Lena Nixon.

### 1.  Legal Framework

The right to due process in a criminal trial is, in essence, the right to defend against the State's charges.  *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973).  "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *see also Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007) (stating that "the exclusion of evidence in a criminal trial abridges an accused's right to present a defense only where the exclusion is arbitrary or disproportionate to the purpose it is designed to serve") (alterations, quotation marks, and citations omitted). "[E]ven where . . . a court erroneously excludes defense evidence, '[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (alterations in original) (quoting *Washington v. Schriver,* 255 F.3d 45, 57 (2d Cir. 2001)), *cert.*

5

*denied*, 549 U.S. 1211 (2007).

The right to compulsory process is guaranteed by the Sixth Amendment, which "provides that 'the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor.'" *United States v. Scheffer*, 523 U.S. 303, 326 (1998).  The right "is applicable to the States" and "'is in plain terms the right to present a defense.'"  *Id*. (quoting *Washington v. Texas*, 388 U.S. 14,19 (1967)).

### 2. Officer Fisher

On the third day of the four-day trial, defense counsel asked the prosecution to produce Officer Fisher so that he could question the officer about a statement that Maurice Odums made to him.  According to defense counsel, Officer Fisher had been endorsed as a witness, but later was removed from the witness list.  Mr. Odums apparently described Petitioner to Officer Fisher as 5'6" tall and "the small guy who came from under the porch."  At trial, Odums maintained that the suspect whom he identified as Petitioner was 6' tall.  Despite this discrepancy, the trial court declined to stop the trial so that the prosecution could produce Officer Fisher.  The court directed defense counsel to proceed without Officer Fisher.  (Tr. Feb. 12, 2003, at 4-12.)

The exclusion of Officer Fisher as a witness was not arbitrary, nor disproportionate to the State's interest in the prompt administration of justice.  Defense counsel did not request the presence of Officer Fisher until midway through trial, even though the trial had been scheduled months earlier.  Even if the trial court erred in excluding Officer Fisher as a witness, the omitted testimony did not create a reasonable doubt that did not otherwise exist.  As the trial court correctly pointed out, defense counsel had already elicited testimony which pointed out the inconsistency between Odums' pretrial description of Petitioner and his testimony at trial.  (Tr.

6

Feb. 11, 2003, at 35-43).  Thus, Petitioner's right to defend himself was not violated.

### 3. Lena Nixon

On the third day of trial, defense counsel asked the trial court for permission to have a witness make a record of his efforts to serve Lena Nixon with a subpoena.  Ms. Nixon was the person whom Petitioner supposedly intended to pick up at a bus stop on the night of the crime.  He testified that he happened to drive near the scene of the crime while he was waiting for Ms. Nixon to arrive at the bus stop.  The trial court ruled that the witness could not testify about his efforts to serve Ms. Nixon, because Petitioner was under no obligation to present any witnesses. (Tr. Feb. 12, 2003, at 80-83.)

Petitioner alleges that Ms. Nixon would have corroborated his testimony and provided essential evidence explaining why he was seen near the site of the crimes shortly after they were committed.  However, as the Michigan Court of Appeals recognized, the most that Ms. Nixon could have said was that Petitioner agreed to pick her up at the bus stop.  Petitioner and Anthony Patton established that fact through their testimony at trial.  The Court therefore concludes that the trial court's refusal to assist Petitioner in compelling Lena Nixon's presence did not deprive Petitioner of his right to present a complete defense.

### B.  The Prosecutor

Petitioner alleges that the prosecutor deprived him of a fair trial by making inappropriate remarks in his opening statement and closing arguments and by improperly cross-examining Petitioner and a defense witness.  Respondent argues that this claim is procedurally defaulted because Petitioner failed to object to the prosecutor's remarks during trial.

### 1.  Procedural Default

7

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). "When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

All three elements of procedural default are satisfied here. First, a state procedural rule in Michigan requires defendants to preserve their claims for appellate review by first raising them in the trial court. *See People v. Carines*, 460 Mich. 750, 761-64 (1999); *People v. Grant*, 445 Mich. 535, 546 (1994). Petitioner violated this rule by failing to object at trial to the prosecutor's disputed remarks and conduct.

Second, the last state court to review Petitioner's claim in a reasoned opinion was the Michigan Court of Appeals, which reviewed the claim for "plain error" affecting substantial rights because Petitioner failed to preserve his allegations of prosecutorial misconduct. The state appellate court's review for "plain error" constituted enforcement of the procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

8

Third, the contemporaneous-objection rule was an adequate and independent state ground for the state court's decision because the rule was "firmly established and regularly followed" by the time of Petitioner's trial. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Because all three elements of procedural default are satisfied, the Court may consider the substantive merits of Petitioner's claims only if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a fundamental miscarriage of justice will occur if the Court fails to consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2. "Cause"

Petitioner alleges that his trial attorney was ineffective for not objecting to the prosecutor's remarks. Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)). To prove that defense counsel was constitutionally ineffective, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. In order to determine whether Petitioner has made the required showing, the Court will evaluate Petitioner's underlying claims about the prosecutor.

9

### a.  Opening Statement

#### i.  Corey Scales' case

Petitioner alleges that the prosecutor testified when he stated in his opening statement that co-defendant Corey Scales' case was resolved.  (Tr. Feb. 10, 2003, at 70.)  According to Petitioner, this comment implied that Scales had been convicted.  The trial court, however, had informed the jurors during *voir dire* that Scales' case was disposed of (*id*. at 4-5), and defense counsel subsequently attempted to impeach Maurice Odums with his testimony from Mr. Scales' trial (Tr. Feb. 11, 2003, at 41-42).  The jury was never told the outcome of Scales' case, and, as the prosecutor pointed out, it was difficult to avoid the fact that Mr. Scales was part of the case. The prosecutor's opening remark about Scales merely alerted the jurors that they would be hearing about Mr. Scales during trial.  The remark was not improper.

#### ii.  Passing the Gold Standard

The prosecutor stated that Maurice Odums "passed the gold standard test, going to a line-up and choosing the right man, that is Don Perkins." (Tr. Feb. 10, 2003, at 81-82).  This remark would have been better suited to closing arguments, where prosecutors may "argue that the jury should arrive at a particular conclusion based on the record evidence, including the conclusion that the evidence prove[d] the defendant's guilt."  *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds as explained in Mackey v. Dutton*, 217 F.3d 399, 405-06 (6th Cir. 2000)).  Even if the comment was improper, it was a brief one and could not have prejudiced Petitioner, given the strength of the evidence against him and the trial court's instruction that the attorneys' opening statements were not evidence.

#### iii.  Comment on Defense Counsel

10

Petitioner's final allegation about the prosecutor's opening statement is that the prosecutor disparaged defense counsel by saying that perhaps defense counsel was not thankful for the jurors' presence. (Tr. Feb. 10, 2003, at 62.) The prosecutor made this remark after defense counsel objected to the prosecutor's expression of appreciation to the jurors on behalf of the victims' families. The remark could not have prejudiced Petitioner because defense counsel began his own opening statement by thanking the jurors for coming out and hearing the case. (*Id.* at 84.) The Court believes, for all the foregoing reasons, that defense counsel was not ineffective for failing to object to the prosecutor's opening statement.

### b. Cross-Examination

#### i. Donta Perkins

Petitioner alleges that the prosecutor gave unsworn testimony when he asked Donta Perkins whether Donta had been present in the courtroom during the trial. According to Petitioner, the prosecutor implied that defense counsel encouraged Donta to violate the trial court's sequestration order. (Tr. Feb. 12, 2003, at 15-16.)

Prosecutors may call the jury's attention to the fact that the defendant had the opportunity to hear the other witnesses testify and to tailor his testimony accordingly. *Portuondo v. Agard*, 529 U.S. 61 (2002). If a defendant's credibility may be attacked on the basis of his or her presence during witnesses' testimony, it does not violate due process to suggest that some other defense witness tailored his testimony on the basis of what he heard in court. The prosecutor therefore engaged in a proper line of inquiry when he asked Donta Perkins about his presence in the courtroom before he testified.

#### ii. Petitioner

The prosecutor asked Petitioner whether he knew of any reason why police officer Eric Decker would lie when he testified that he instructed Petitioner to stop. (Tr. Feb. 12, 2003, at 124.) Under state law, prosecutors are not permitted to ask a defendant to comment on the credibility of a prosecution witness, because the defendant's opinion of the credibility of prosecution witnesses is not probative of the matter. *People v. Buckey*, 424 Mich. 1, 16-17 (1985). The prosecutor's question, however, was an indirect attack on Petitioner's credibility. Because Petitioner put his veracity at issue by taking the stand, the prosecutor's question was not improper. *United States v. Veal*, 23 F.3d 985, 989-90 (6th Cir. 1994).

Even if Petitioner's opinion of another witness's testimony was irrelevant, questions that call for answers which are inadmissible due to relevancy do not constitute prosecutorial misconduct rising to the level of a federal due process violation. *Wade v. White*, 120 Fed. Appx. 591, 594 (6th Cir. 2005) (unpublished). Furthermore, Petitioner handled the prosecutor's question fairly well. He stated that he did not know of any reason why Officer Decker would lie about the incident, and he explained that he did not stop for the officer because his car windows were rolled up and he did not hear the officer tell him to stop. (Tr. Feb. 12, 2003, at 123-25.)

### c. Closing Arguments

#### i. Testifying

Petitioner contends that the prosecutor testified during closing arguments when he stated that the unidentified third perpetrator of the crimes was Anthony Patton, that the crime scene was lit up by a floodlight, that Petitioner refused to face Maurice Odums at trial, and that there was a classic return to the scene of the crime. Prosecutors may not misrepresent facts in evidence, nor assert facts never admitted in evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir.

12

2000), but they may "argue the record" and "forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

Witnesses testified that Petitioner and Anthony Patton were together at the time the crime was committed, and because the third perpetrator was never identified or arrested, there was some basis for concluding that Anthony Patton might have committed the crimes with Petitioner and Corey Scales. The trial court, in fact, stated at the sentencing that it had concluded from the evidence that Anthony Patton was the unidentified third perpetrator of the crimes. (Tr. Feb. 28, 2003, at 7.)

The comment that the backyard was lit up by a floodlight was supported by testimony. (Tr. Feb. 11, 2003, at 20, 83, and 104). The remark that there was a classic return to the scene of the crime was supported by Maurice Odums' testimony that Petitioner was one of the three perpetrators of the crime and by Sergeant Eric Decker's testimony that Petitioner drove near the scene of the crime shortly after Corey Scales was arrested and placed in a police car. (*Id*. at 143-46.)

The record also supports the comment that Petitioner faced away from Maurice Odums while Odums was testifying. When the prosecutor asked Odums whether he could identify the man who came from under the porch, Odums pointed to someone in the courtroom. The prosecutor then said, "There's (sic) two gentlemen seated right in front of you. One has his back to you, and the other one's facing you. Which one are you referring to?" Odums answered, "The guy with his back to me." (Tr. Feb. 10, 2003, at 109.) Odums' response confirms that Petitioner was seated with his back to the witness stand.

The prosecutor's closing remarks were supported by the evidence. Therefore, defense

counsel was not ineffective for failing to object to them.

### ii.  Shifting the Burden of Proof

Petitioner alleges that the prosecutor shifted the burden of proof when he noted in his closing argument that defense counsel had not presented Lena Nixon as a witness.  (Tr. Feb. 13, 2003, at 29.)  Ms. Nixon was the woman that Petitioner and Anthony Patton supposedly were attempting to pick up when they drove by the crime scene.

Prosecutors may not suggest that the defendant has the burden of proof or an obligation to produce evidence to prove his innocence, *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993), but they may highlight inadequacies in the defense, *Bates*, 402 F.3d at 646, and even comment on the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).  The proscription against commenting on a defendant's post-arrest silence, *see Doyle v. Ohio,* 426 U.S. 610, 619-20 (1976), "does not extend to a defendant's failure to call a witness or to otherwise present exculpatory evidence so long as the prosecutor does not tax the exercise of the defendant's right to remain silent."  *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002) (citing *United States v. Cabrera,* 201 F.3d 1243, 1250 (9th Cir.2000); *United States v. Sblendorio,* 830 F.2d 1382, 1391 (7th Cir. 1987)).  The prosecutor did not state that Petitioner was required to prove his innocence or produce any evidence. Therefore, his brief comment about defense counsel's failure to produce Lena Nixon was proper.

Even if the remark was improper, it could not have prejudiced Petitioner, given the substantial evidence against him and the trial court's jury instructions.  The trial court informed the jury that the prosecutor carried the burden of proof, that Petitioner was presumed innocent

throughout trial, and that Petitioner was not required to do anything, not even prove his alibi

defense.  (Tr. Feb. 13, 2003, at 85-86.)

### iii.  Comment on Flight

Next, Petitioner alleges that the prosecutor misled the jury when he stated that flight

could be interpreted as evidence of guilt.  (*Id*. at 33.)  Petitioner maintains that flight is evidence

of consciousness of guilt, not substantive evidence of guilt.  To the extent that the prosecutor

may have misstated the law, the trial court cured the error when it explained to the jurors that a

person might run or hide due to consciousness of guilt and that someone can flee for an innocent

reason.  (*Id*. at 95-96).

### iv.  Disparaging Defense Counsel

Petitioner's final allegation about the prosecutor is that he disparaged defense counsel by

referring to counsel as a wolf in sheep's clothing (*id*. at 67), by stating that counsel represented a

criminal (*id*. at 68), and by repeatedly stating that defense counsel was paid to represent

Petitioner (*id*. at 69-70, 72, 74-75).  The Court agrees with Petitioner that these remarks were

improper.  A prosecutor may not make "unfounded and inflammatory attacks on the opposing

advocate."  *United States v. Young*, 470 U.S. 1, 9 (1985).  The trial court, however, instructed the

jurors that the attorneys' opening statements and closing arguments were not evidence and that

the jurors should ignore any argument not supported by the evidence.  (Tr. Feb. 13, 2003, at 91-

92.)  The trial court also explained that the participants in the case had different roles to play,

that the attorneys were advocates, who represented two different points of view, and that defense

counsel's function was to protect his client's rights.  (*Id*. at 82-83.)  Thus, the remarks, although

improper, were not flagrant and could not have prejudiced the defense.

15

### d.  Conclusion

The Court concludes that defense counsel's failure to object to the prosecutor's remarks did not amount to deficient performance and, even if it did, the allegedly deficient performance did not prejudice the defense.  Therefore, defense counsel was not ineffective, and Petitioner has failed to establish "cause" for his procedural default.

### 3.  Prejudice; Miscarriage of Justice

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has failed to show "cause" for his procedural default. *Willis*, 351 F.3d at 746 (citing *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)).  The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496.  To be credible, a claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Petitioner's claims about the prosecutor.  His prosecutorial-misconduct claim is procedurally defaulted.

### C.  The Jury Instructions

Petitioner alleges next that the trial court erred by gratuitously reading a jury instruction,

16

which vouched for prosecution witness Maurice Odums, who was the victim of the assault

charge.  The Michigan Court of Appeals concluded on review of this claim that the trial court did

not err in giving the instruction because the instruction did not vouch for Odums.

The question on habeas review of a jury instruction is not whether the instruction was

"undesirable, erroneous, or even 'universally condemned.'"  *Cupp v. Naughten*, 414 U.S. 141,

146 (1973).  Instead, before a federal court may overturn a state conviction, the instruction must

have "violated some right which was guaranteed to the defendant by the Fourteenth

Amendment" or the ailing instruction by itself must have "so infected the entire trial that the

resulting conviction violates due process."  *Id*. at 146-47.

The disputed jury instruction here reads:

> You're not to consider the lifestyles of the victims, or the lifestyles of any of the
> parties in the case.  You are to consider the facts and do so objectively.
>
> Likes and dislikes and lifestyles or whether you approve of what the
> parties do, or how they conduct themselves, that's not the issue.  You're to
> disregard that and decide the case objectively on the facts.

(Tr. Feb. 13, 2003, at 84.)  Petitioner alleges that this instruction vouched for the prosecution's

main witness, Maurice Odums, because the instruction tended to divert the jury's attention from

any consideration of evidence which pertained to Odums' credibility.

Judges are expected to be impartial and to "avoid all appearances of advocacy as to those

questions which are ultimately to be submitted to the jury."  *United States v. Hickman,* 592 F.2d

931, 933 (6th Cir. 1979).  The record in this case does not support Petitioner's contention that

the trial court's jury instruction on lifestyles amounted to vouching for Maurice Odums'

credibility.  The court obviously meant to emphasize to the jurors that they should decide the

case objectively on the basis of the facts and not on the basis of the parties' lifestyles.  The

17

court's comments did not amount to advocacy; nor did they suggest that Odums was credible. The court, in fact, referred to the *parties*' lifestyles, not just the lifestyles of the victims.  The instruction did not amount to improper vouching for a prosecution witnesses and did not infect the trial with such unfairness as to violate Petitioner's right to due process.

### D.  Defense Counsel

Petitioner's fourth and final claim alleges ineffective assistance of trial counsel.  The Michigan Court of Appeals determined on review of this claim that Petitioner abandoned some of his claims about defense counsel by not citing any supporting legal authority.  Although Respondent argues that the abandoned claims are procedurally defaulted for purposes of habeas corpus review, the Court will proceed to address the merits of Petitioner's claims.  A federal habeas court need not address a procedurally defaulted issue before deciding against a petitioner on the merits.  *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

As noted, an attorney is ineffective if the attorney's performance was deficient and the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  Petitioner must demonstrate that his attorney's representation "fell below an objective standard of reasonableness." *Id*. at 688.  The prejudice prong of the *Strickland* test requires showing that the result of the proceeding would have been different "but for counsel's unprofessional errors." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "Unless a defendant makes both showings [deficient performance and prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

18

### 1. The Prosecutor's Remarks and the Jury Instructions

Petitioner alleges that defense counsel was ineffective for failing to object to the prosecutor's remarks.  The Court addressed this issue above and concluded that defense counsel was not ineffective for failing to object.  No further discussion is necessary on this point.

Petitioner also claims that defense counsel should have objected to the trial court's jury instruction on the lifestyles of the parties.  This claim is not supported by the record.  Although defense counsel did not object when the trial court read the instruction, he did object when the prosecutor first requested such an instruction.  (Tr. Feb. 13, 2003, at 3-7.)

### 2. The Line-up and Failure to Produce an Expert Witness

Petitioner alleges next that defense counsel was ineffective for not filing a motion to suppress the lineup at which Maurice Odums identified Petitioner.  Petitioner contends that the line-up was suggestive because two of the five persons in the line-up were thirty-five years old while Petitioner was approximately twenty years old at the time.  Petitioner also alleges that defense counsel should have presented an expert witness on the inherent problems with eyewitness testimony.

"The admission of evidence derived from a suggestive identification procedure violates a defendant's right to due process if the confrontation leading to the identification was 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'"  *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).  Maurice Odums observed Petitioner for about thirty to forty seconds on the night of the crime.  He was standing about fifteen feet away from Petitioner, and the backyard was lit by a floodlight and a porch light.  At

the line-up on the following day, Odums recognized Petitioner within "a minute or two." He

was certain about his identification, and he did not pick anybody else out of the line-up.

Although two men in the line-up were thirty-five years old and Petitioner apparently was about

twenty years of age, the discrepancy in ages does not appear to have influenced Odums. He

claimed at trial that he picked out the person that looked familiar to him from the previous night.

(Tr. Feb. 11, 2003, at 27 and 53-55.) Furthermore, the attorney who was present to ensure that

the line-up was fair had no objections to it. (*Id*. at 199.)

To his credit, defense counsel elicited testimony at trial that two participants in the line-

up were significantly older than Petitioner. Counsel also attacked inconsistencies in Maurice

Odums' descriptions of Petitioner. Defense counsel was not ineffective for making his point

through cross-examination of witnesses, as opposed to producing an expert witness and moving

to suppress Maurice Odums' identification of Petitioner. There was no evidence that the line-up

was inherently unfair or that an expert witness was necessary, and "[c]ounsel cannot be found

ineffective for failing to bring meritless motions." *Johnson v. Tennis*, 549 F.3d 296, 303 (3d Cir.

2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

### 3. Cross-Examination

Petitioner's final allegation about defense counsel is that counsel was ineffective for

attempting to ask an improper question of Sergeant Ernest Wilson, who conducted the line-up.

The trial court interrupted defense counsel when he started to ask Sergeant Wilson about the

FBI's investigation of the Detroit Police Department. The trial court stated that the question was

improper because the Police Department was not on trial and the question was irrelevant. (Tr.

Feb. 12, 2003, at 177-78.)

The improper question was a minor incident in a four-day trial.  Furthermore, the trial court made light of the impropriety by stating that everyone in the courtroom was under scrutiny all the time, especially the judge.  Defense counsel's improper question did not rise to the level of deficient performance and, even if it did, the deficiency did not prejudice the defense.

Defense counsel's acts and omissions did not fall below an objective standard of reasonableness.  Further, there is not a reasonable probability that the result of the trial would have been different but for the alleged errors.  Therefore, Petitioner has failed to show that his attorney was constitutionally ineffective.

## IV. Conclusion

The state appellate court's rejection of Petitioner's claims was not contrary to, an unreasonable application of, Supreme Court precedent.  Accordingly, the petition for writ of habeas corpus (Doc. No. 1) is **DENIED**.

Reasonable jurists, however, could disagree with the Court's resolution of Petitioner's first, second, and fourth claims regarding his right to present a defense, the prosecutor's conduct, and defense counsel's representation.  Therefore, a certificate of appealability may issue on those claims.  *Banks v. Dretke*, 540 U.S. 668, 674 (2004).  The Court declines to issue a certificate of appealability on Petitioner's third claim regarding the jury instructions, because no reasonable jurist would find the Court's assessment of that claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Finally, Petitioner may appeal this Court's decision *in forma pauperis* because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 23, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
January 23, 2009.

S/Denise Goodine
Case Manager

22